**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER BREWER, | ) | |
| | ) | CASE NO.    1:10-cv-01224 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Jennifer Brewer ("Brewer") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Brewer's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and REMANDED for further proceedings consistent with this opinion.

## I.  Procedural History

On September 25, 2007, Brewer filed an application for SSI alleging a disability onset date of January 2, 2006. At the hearing, the alleged onset date was amended to January 24, 2008.

Her application was denied both initially and upon reconsideration.  Brewer timely requested an administrative hearing.

On July 22, 2009, an Administrative Law Judge ("ALJ") held a hearing during which Brewer, represented by counsel, testified.  Robert Edwards testified as an impartial vocational expert ("VE").  On August 24, 2009, the ALJ found Brewer was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II.  Evidence

### *Personal and Vocational Evidence*

Age twenty-one (21) at the time of her administrative hearing, Brewer is a "younger" person under social security regulations.  *See* 20 C.F.R. § 416.963(c).  Brewer has a limited education and no past relevant work.  (Tr. 18.)

### *Hearing Testimony*

At the hearing, Brewer testified to the following:

- She lives with her three children and her fiancé.  (Tr. 24.)

- She has no difficulty providing the necessary care for her children, though her mother and her fiancé's mother help her do so.  (Tr. 25, 30.)

- She is 5'1" tall and weighs 195 pounds.  *Id.*

- She cooks and performs housework.  (Tr. 26.)

- She does not drive, and she has no driver's license.  *Id.*

- She is unable to shop by herself.  (Tr. 27.)

- On a daily basis, she experiences headaches and fatigue.  She also has suffered from "staring seizures" since her second shunt surgery in 2007.  Initially, she suffered three to five seizures daily, and improved to only one or two per week until a shunt revision set her back.  At the time of the hearing, she was having one

2

or two seizures daily.  (Tr. 27-28.)

•  She has prescribed medication to treat her seizures.  She always takes her medications as prescribed.  (Tr. 28.)

•  She sees spots in front of her eyes.  She has no problems using her arms, hands, legs, and feet.  She does have some problems with her balance.  (Tr. 29.)

The VE agreed with the ALJ that Brewer did not have any significant past relevant work.

(Tr. 30.)  The ALJ asked the VE to assume the following hypothetical individual:

> [A] hypothetical individual would possess a residual functional capacity for light work.  This individual can lift and carry 10 pounds frequently, 20 pounds occasionally, sit for eight hours in an eight-hour day, walk or stand six hours in an eight-hour day.  No climbing or working at unprotected heights or around dangerous machinery, no operations of motor vehicles and this individual is limited to simple, repetitive job tasks, non-productive in nature.  Consider[ing] Ms. Brewer's age and education, are there jobs she could perform?

(Tr. 30-31.)  The VE testified that such person could perform the following light, unskilled jobs: cleaner/housekeeping (31,300 locally, 825,000 nationally); cafeteria attendant (5,900 locally, 155,000 nationally); and, laundry hand presser (5,100 locally, 136,000 nationally).  The VE testified that if the hypothetical individual missed two to three days a month due to seizures, headaches, and/or fatigue, there would be no employment.  (Tr. 31.)

### III.  Standard for Disability

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe

3

impairment."  A "severe impairment" is one which "significantly limits ... physical or mental

ability to do basic work activities."  Third, if the claimant is not performing substantial gainful

activity, has a severe impairment that is expected to last for at least twelve months, and the

impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404,

Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's

impairment does not prevent the performance of past relevant work, the claimant is not disabled.

For the fifth and final step, even though the claimant's impairment does prevent performance of

past relevant work, if other work exists in the national economy that can be performed, the

claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

The ALJ found Brewer established medically determinable, severe impairments, due to

hydrocephalus status post shunt placement and depression with anxiety.[1]  (Tr. 13.)  However, her

impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt.

404, Subpt. P, App. 1.  (Tr. 14.)  Brewer was determined to have a Residual Functional Capacity

("RFC") for a limited range of light work.  (Tr. 15-18.)  The ALJ then used the Medical

Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Brewer is

---

[1]  The ALJ specifically declined to find that Brewer's diagnoses for attention-deficit
hyperactivity disorder ("ADHD") and obsessive compulsive disorder ("OCD") constituted
severe impairments.  (Tr. 13-14.)  Without explanation, Brewer's seizures also were not
included in the ALJ's finding of severe impairments.  *Id.*  In the Sixth Circuit, if a claimant's
impairments impact his or her ability to perform basic work activities in even a *de minimis*
way, a determination that the impairments are not severe will not be supported by substantial
evidence.  *See Halcomb v. Bowen*, No. 86-5493, 1987 WL 36064, at *3 (6th Cir. May 27, 1987);
*Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985); *Salmi v.
Sec'y of Health & Human Servs.*, 774 F.2d 685, 691-92 (6th Cir. 1985).

4

not disabled.  (Tr. 18-19.)

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by

substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI.  Analysis

### *Treating Physicians and State Agency Physicians*

Brewer asserts that the ALJ erred by failing to give proper weight to the opinion of her treating psychiatrist, Sarbjot Ajit, M.D.  (ECF No. 15 at 13-17.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)); accord 20 C.F.R. § 416.927.  "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 F. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)  Furthermore, "[t]reating source medical opinions are still entitled to

6

deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and

416.927." *Blakley*, 581 F.3d at 408.[2]

      Nonetheless, the opinion of a treating physician must be based on sufficient medical data,

and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435

(6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406

("It is an error to give an opinion controlling weight simply because it is the opinion of a treating

source if it is not well-supported by medically acceptable clinical and laboratory diagnostic

techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting*

SSR 96-2p).  Moreover, the ALJ is not bound by conclusory statements of a treating physician

that a claimant is disabled, but may reject such determinations when good reasons are identified

for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of

Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391

(6th Cir.1984).  According to 20 C.F.R. § 416.927(e)(1), the Social Security Commissioner makes

the determination whether a claimant meets the statutory definition of disability.  This necessarily

includes a review of all the medical findings and other evidence that support a medical source's

statement that one is disabled.  "A statement by a medical source that you are 'disabled' or

'unable to work' does not mean that we will determine that you are disabled." *Id.*  It is the

Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801

---

[2]  Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating
physician's opinion, the Commissioner should consider the length of the relationship
and frequency of examination, the nature and extent of the treatment relationship, how well-
supported the opinion is by medical signs and laboratory findings, its consistency with the
record as a whole, the treating source's specialization, the source's familiarity with the Social
Security program and understanding of its evidentiary requirements, and the extent to which
the source is familiar with other information in the case record relevant to the decision.

7

F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

On August 24, 2006, Dr. Ajit began treating Brewer. (Tr. 243.) She had not been taking her Prozac. *Id.* He noted her history of being sexually assaulted at age ten, fourteen, and seventeen. *Id.* Brewer told Dr. Ajit that she had "intense feelings of self-mutilation, i.e. cutting herself to relieve stress," though her impulses were not suicidal. *Id.* She admitted to periods of dissociation, anger, and numbness, but denied suicidal/homicidal ideations or auditory/visual hallucinations. *Id.* Dr. Ajit prescribed Remeron and assessed Post-Traumatic Stress Disorder ("PTSD") with possible Cluster B traits. *Id.*

On July 31, 2008, Brewer reported to Dr. Ajit that she stopped taking all of her medications after learning that she was pregnant. (Tr. 384.) She complained of increased irritability, anxiousness, and anger. *Id.* Her depressive symptoms worsened. *Id.* Dr. Ajit assessed mood disorder and PTSD. *Id.* He started Brewer on a low dose of Clonazepam. *Id.*

On August 29, 2008, Brewer told Dr. Ajit that she tolerated her medications well with no side effects. (Tr. 383.) She reported struggling with irritability, intermittent periods of anxiety, and ruminative thoughts, but said she was doing well overall. She denied significant depressive episodes. *Id.* Dr. Ajit assessed mood disorder and OCD. *Id.*

On September 19, 2008, Brewer stated her mood was good overall, and denied any significant depressive symptoms, feelings of guilt, or hopelessness. (Tr. 382.) She also reported that her energy levels were good. *Id.*

On October 3, 2008, Brewer complained that she was more irritable, more depressed, and had reduced energy and appetite. (Tr. 381.) Her mood was depressed and her affect congruent.

8

*Id.* He started her on Zoloft. *Id.*

On April 20, 2009, Dr. Ajit continued to diagnose PTSD, ADHD, OCD, and major depression. (Tr. 385.) Brewer claimed she had bouts of irritability and depression with intermittent periods of anxiety since giving birth in January. *Id.* She had not been on her medications for some time. *Id.* On examination, he found Brewer to be "alert, oriented, cooperative, at times distractable, ruminated about interpersonal conflicts." *Id.* He assigned her a Global Assessment of Functioning ("GAF") score of 45.[3]

On the same day, Dr. Ajit completed an assessment of Brewer's mental capacity. (Tr. 358.) He found that she had poor to no ability to make the following occupational adjustments: use judgment, maintain attention and concentration for extended periods of two hour segments, respond appropriately to changes in routine setting, deal with the public, relate to co-workers, interact with supervisor(s), function independently without special supervision, work in coordination with or in proximity to others without being unduly distracted or distracting, deal with work stresses, or complete a normal workday and work week without interruptions from psychologically based symptoms. (Tr. 356-57.) She also had poor to no ability to understand, remember and carry out complex, detailed, or even simple job instructions. (Tr. 357.) He rated her ability to behave in an emotionally stable manner, relate predictably in social situations, manage funds/schedules, and to leave home on her own as "poor to none." *Id.* Finally, he also

---

[3] A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

9

opined that Brewer would be totally unemployable for twelve months or more.[4] (Tr. 358.)

On April 28, 2009, Brewer indicated that she was tolerating her medications with no side effects. (Tr. 380.) She stated that her medications had helped her with her depressive symptoms, irritability and headaches, but she felt fatigued and tired. *Id.* At the same time, she described her energy levels as "fairly good." *Id.* Dr. Ajit continued to diagnose PTSD, ADHD, OCD, and major depression. *Id.*

With respect to Dr. Ajit's opinion as it relates to her mental functional capacity, the ALJ found as follows:

> Considering the above, the undersigned gives little weight to Dr. Ajit's April 2009 Mental Capacity Assessment and Mental Functioning Statement in which he indicated that the claimant is "totally unemployable" and has numerous, extensive limitations in her intellectual functioning, ability to make occupational adjustments, and ability to make personal and social adjustments (Exhibits l7F, l8F; SSR 96-2p). While the claimant does have limitations resulting from her impairments, the record, including Dr. Ajit's notes described above, does not support the extent of limitations he describes. On the other hand, the undersigned gives great weight to the opinions of State agency consultants, Dr. Alice Chambly and Dr. Leslie Rudy, who indicated that the claimant has adequate memory and concentration to perform simple, 1-2 step tasks, and can function in work situations with routine and predictable duties (Exhibits 6F, 7F, l2F; SSR 96-6p). Although Dr. Chambly based her assessment, in part, on the claimant's diagnoses of OCD and ADHD, the undersigned finds that her opinion is nonetheless consistent with the totality of the record.

(Tr. 17-18.)

The ALJ assigned "little weight" to Dr. Ajit's opinions of Brewer's mental functioning capacity. (Tr. 18.) As this Court understands the ALJ's opinion, two reasons were offered for

---

[4] The Commissioner asserts that this latter statement that Brewer is unemployable is not entitled to any special weight. The Commissioner is correct, as the determination of disability, is expressly reserved to the Commissioner and the opinion of treating physicians is given no special significance. *See* 20 C.F.R. §§ 404.1527(e)(2),(3); 416.927(e)(2),(3). Nonetheless, the actual limitations identified by Dr. Ajit do constitute medical opinions of a treating physician and are discussed below.

rejecting Dr. Ajit's opinion.  First, the ALJ opined that the limitations Dr. Ajit ascribed to

Brewer were not supported by Dr. Ajit's own treatment notes.  (Tr. 17-18.)  Apparently, the ALJ

believed that the limitations found by Dr. Ajit were either inconsistent with or contradicted by

the following notes: Brewer improved with medication and therapy; she was more active in May

of 2008; her energy levels were "fairly good" in August of 2008 when she denied feeling

depressed or irritable; her symptoms improved again in 2009 when she resumed treatment;[5] she

was alert, oriented, and cooperative during appointments; and, she had linear, coherent and

logical thought processes.  (Tr. 17.)

The ALJ's reasoning appears to be based on the assumption that a person with the severe

limitations that Dr. Ajit assessed could not be alert, oriented, cooperative during appointments,

be more active, have fairly good energy levels, or exhibit linear, coherent and logical thought

processes.  Although the ALJ's assumption appears reasonable to a lay person and might

ultimately be correct, he has no special expertise to make such an assumption.  The ALJ's

finding that Dr. Ajit's opinion is inconsistent with his own treatment notes essentially constitutes

the ALJ's interpretation of the medical data of record.  ALJ's are not trained medical experts and

it is well-established that they may not substitute their own opinion for that of a medical

professional.  *See, e.g., Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir. 2006) ("[T]he ALJ

may not substitute his own medical judgment for that of the treating physician where the opinion

of the treating physician is supported by the medical evidence.") (*citing McCain v. Dir., Office of

Workers' Comp. Programs*, 58 Fed. App'x 184, 193 (6th Cir. 2003) (citation omitted); *Pietrunti

v. Director, Office of Workers' Comp. Programs, United States DOL*, 119 F.3d 1035, 1044 (2nd

_____

[5] As indicated in the medical records, Brewer's complaints of depression, irritability, and anger
were greatest when she was not taking her medications.  (Tr. 384-85.)

11

Cir. 1997); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including [ALJs] of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.")); *accord Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 823-24 (N.D. Ohio 2009) ("Although the ALJ is charged with making credibility determinations, an ALJ 'does not have the expertise to make medical judgments.'"); *Stallworth v. Astrue*, 2009 WL 2271336 at *9 (S.D. Ohio, Feb. 10, 2009) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record.")(*quoting Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)).

The ALJ presumed that indications of improvement in the treatment notes rendered Dr. Ajit's functionality assessment unsupportable.  While there is no doubt that the records reflect that Brewer, at times, was doing better and reported that her mood was good, it is clear that Dr. Ajit did not believe the level of improvement was significant enough to render her mental functioning capabilities greater than indicated.  *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (finding that simply because a claimant, who suffered from a myriad of mental impairments, made some improvement did not mean that her impairments did not seriously affect her ability to function in a workplace.)  The ALJ is not qualified to offer his own psychiatric assessment based on Dr. Ajit's treatment notes and his reasons for not crediting Dr. Ajit's opinions are insufficient.

The ALJ assigned great weight to non-examining State Agency consultants – Alice Chambly, Psy.D., and Leslie Rudiy, Ph.D.[6]  (Tr. 18.)  However, the ALJ cannot base his rejection of Dr. Ajit's opinion upon its inconsistency with the opinions of non-examining State

---

[6] The other State Agency consultants offered only physical RFC assessments.  (Tr. 218-26, 292-99.)

Agency consultants.  To do so would turn the treating physician rule on its head.  It is well established that the opinions of non-examining physicians carry little weight when they are contrary to the opinion of a treating physician.  *See, e.g., Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. Mich. 1987) (finding that the opinion of a non-examining physician "cannot provide a sufficient basis for rejecting the opinions of plaintiff's treating physicians") (*citing Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (*per curiam*); *Fife v. Heckler*, 767 F.2d 1427, 1431 (9th Cir. 1985) ("If the ALJ wishes to disregard the opinion of the treating physician, he must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record, even where the treating physician's opinion is controverted by the Secretary's consultant.")

It also bears noting that there were no other treating mental health specialists of record that offered opinions contrary to that of Dr. Ajit.  State Agency consultant Dr. Chambly's mental RFC, dated November 27, 2007, predates Dr. Ajit's April 2009, assessment by well over a year. (Tr. 202.)  Dr. Chambly specifically noted that her functional capacity assessment was made without the benefit of "a disability opinion or statement [from any treating source]."  *Id.* Although Dr. Rudy reviewed the evidence of record on May 2, 2008, and affirmed Dr. Chambly's assessment, this too was done without the benefit of Dr. Ajit's April 2009 assessment.  Therefore, even if it were proper to reject a treating physician's opinion solely on the ground that it differed from the opinion of a non-treating source, it would be unreasonable to do so where none of the medical consultants had the benefit of Dr. Ajit's more recent treatment notes or his ultimate conclusions.

As this Court has previously stated:

Given the significant implications of a failure to properly articulate (i.e., remand)

13

> mandated by the [6ᵗʰ Circuit], an ALJ should structure the decision to remove any
> doubt as to the weight given the treating source's opinion and the reasons for
> assigning such weight.  In a single paragraph the ALJ should state what weight he
> or she assigns to the treating source's opinion and then discuss the evidence of
> record supporting that assignment. Where the treating source's opinion does not
> receive controlling weight, the decision must justify the assignment given in light
> of the factors set out in [20 CFR 404.1527(d)(1)-(6)].

*Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 731 (N.D. Ohio 2005).  The ALJ failed to

discuss factors contained in 20 C.F.R. § 404.1527, such as Dr. Ajit's status as a mental health

specialist or the extended duration of his treatment.  Therefore, this matter must be remanded for

a decision that adequately explains the weight accorded to the various medical sources of record

in compliance with 20 C.F.R. § 404.1527.  While the ALJ is not bound to ascribe controlling or

great weight to Dr. Ajit's opinion, his reasons for declining to do so must comply with applicable

federal regulations and the Social Security Administration's own procedures.  As such, Brewer's

assignment of error is well taken and her remaining assignments of error are hereby rendered

moot.

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not

supported by substantial evidence.  Accordingly, the decision of the Commissioner is

VACATED and the case is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: June 17, 2011